DENNIS JOHNSON AND WIFE, JANICE JOHNSON, PLAINTIFFS V. THE NEWS AND
    OBSERVER PUBLISHING COMPANY, THE McCLATCHY COMPANY, &
    McCLATCHY NEWSPAPERS, INC., D/B/A THE SMITHFIELD HERALD AND JACK
    ROBERTS, DEFENDANTS

No. COA03-1386

(Filed 16 November 2004)

**Negligence— vicarious liability—newspaper carrier—inde-
pendent contractor—summary judgment**

> Summary judgment should not have been granted for defend-
> ant-newspapers on the issue of vicarious liability in an action
> arising from a newspaper carrier's automobile accident. It cannot
> be concluded, as a matter of law, that the carrier was an inde-
> pendent contractor: he was not exercising an independent busi-
> ness or occupation, there were no skill or education require-
> ments, the variations in the time and manner of delivery which
> the carrier could choose were considerably limited, and the car-
> rier's contract could be terminated if he breached any of its pro-
> visions, while few duties were placed on the newspaper.

Appeal by plaintiffs from judgment entered 18 August 2003 by
Judge Knox V. Jenkins, Jr., in Johnston County Superior Court. Heard
in the Court of Appeals 17 June 2004.

> *Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for
> plaintiff-appellants.*

> *Yates, McLamb & Weyher, L.L.P., by Erin D. McNeil, for
> defendant-appellees The News & Observer Publishing
> Company, The McClatchy Company, & McClatchy Newspapers,
> Inc. d/b/a The Smithfield Herald.*

THORNBURG, Judge.

Plaintiffs appeal the trial court's grant of summary judgment for
defendant-newspaper publishers and the denial of their motion for
summary judgment on the issue of vicarious liability.·

Plaintiffs' personal injury claims arise out of an automobile
accident involving plaintiffs and defendant Jack Roberts. Roberts
worked as a newspaper carrier for the Smithfield Herald and was
delivering newspapers when the accident occurred. Plaintiffs
sought recovery from Roberts for negligence and from the Smithfield

Herald, its affiliate, and its parent company (collectively "the Herald") on the basis of respondeat superior. The Herald denied liability for plaintiffs' accident based on its contention that Roberts was an independent contractor rather than an employee. Plaintiffs and the Herald filed cross motions for summary judgment on the issue of vicarious liability. After holding that Roberts was an independent contractor as a matter of law, the trial court ruled that the Herald had no vicarious liability in this case. The trial court granted summary judgment in favor of the Herald and denied plaintiffs' motion for summary judgment.

In support of summary judgment, the parties relied on the employment contract and transcripts from the depositions of Jack Roberts and the publisher of the Smithfield Herald. The record shows that when the accident occurred in 1999, Roberts had been delivering newspapers for the Herald for about ten years. In the employment contract, the Herald assigned Roberts a delivery route and permitted him to purchase newspapers from the Herald at a wholesale rate. However, the Herald reserved the right to renegotiate this wholesale rate upon thirty days notice to the carrier.

Roberts received as payment for his work the difference between the wholesale rate at which he bought the newspapers and the retail rate at which they were sold to customers. The Herald agreed to bill customers who prepaid by mail, but any amount a customer failed to pay would be deducted from Roberts's paycheck. The contract provided that Roberts could bill the other customers in any manner he chose.

The Herald authorized Roberts to use his own judgment and discretion as to whether and in what manner to do business with customers. The contract only required that he "exert his best efforts to increase the number of customers for The Smithfield Herald . . . and to keep those customers satisfied." Roberts could determine the means and manner in which he delivered newspapers to customers "without control or supervision" from the Herald. But the contract also provided that Roberts was responsible for "the prompt and satisfactory delivery" of the newspaper to customers on his route and required Roberts to deliver the papers "in a dry and readable condition . . . with delivery completed by 5:00 p.m."

Pursuant to the contract, Roberts used his own vehicle to complete his route and purchased his own liability insurance. He was designated as an "independent contractor" and had authority to hire

assistants to help him, but those assistants were considered his employees and he was responsible for compensating them. The contract specifically assigned sole liability to Roberts for any third party claims arising out of tortious acts committed by him or his assistants.

The Herald did not withhold taxes from his paycheck or provide him with employee benefits. Either party could terminate this agreement for any reason with thirty days notice or could terminate it instantly for a breach of contract by the other party.

Under the doctrine of respondeat superior, an employer can be held vicariously liable for a worker's negligence when an employer-employee relationship exists. *Gordon v. Garner*, 127 N.C. App. 649, 658, 493 S.E.2d 58, 63 (1997), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 86 (1998). Generally, an employer is not liable for the negligent acts of an independent contractor. *Id.*

Whether a party is an independent contractor is a mixed question of law and fact. *Yelverton v. Lamm*, 94 N.C. App. 536, 538, 380 S.E.2d 621, 623 (1989). Determining the terms of the agreement between the parties is a question of fact. *Id.* Once the factual disputes are resolved, deciding whether that agreement establishes an independent contractor relationship is a matter of law. *Id.* "[W]here the facts are undisputed or the evidence is susceptible of only a single inference and a single conclusion, the court must determine whether a party is an employee or an independent contractor as a matter of law." 41 Am. Jur. 2d *Independent Contractors* § 79 (2000); *see also Little v. Poole*, 11 N.C. App. 597, 600, 182 S.E.2d 206, 208 (1971).

Pursuant to N.C.R. Civ. P. 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The party moving for summary judgment bears the burden of showing that no material issue of fact exists and the trial court must construe all inferences of fact in the light most favorable to the non-moving party. *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

Essentially, the issue for this Court is whether the facts, considered in the light most favorable to plaintiffs, support the trial court's conclusion that Roberts was an independent contractor. The Herald contends that the employment contract fully reflects the

conditions of Roberts's employment and establishes that he was an independent contractor. Plaintiffs argue that the surrounding circumstances and the parties' actions demonstrate the actual relationship between the Herald and Roberts was that of employer-employee. As we conclude that the evidence is susceptible to more than one inference, we hold that summary judgment was not appropriate for either party on the issue of whether Roberts was an independent contractor. We reverse and remand.

Under North Carolina law, an independent contractor is defined as one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the results of his work. *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 384, 364 S.E.2d 433, 437 (1988). Although the contract with the Herald designates Roberts as an "independent contractor" and assigns to him sole liability for any third party claims against him, these types of contractual declarations are not determinative of the relationship or the rights of the parties. *Yelverton*, 94 N.C. App. at 540, 380 S.E.2d at 624. An employer cannot exonerate himself from his legally imposed liability to a third party for injury resulting from the tortious acts of his employee simply by contracting with the employee that he is to be free from the employer's control. *Id.*

In *Hayes v. Elon College*, 224 N.C. 11, 29 S.E.2d 137 (1944), our Supreme Court identified several factors to consider in determining whether a person is an independent contractor. These factors include whether the person:

> (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id.* at 16, 29 S.E.2d at 140. However, none of these factors are determinative, nor is the presence of all required to indicate an independent contractor relationship. *Id.* The *Hayes* factors are considered along with the other circumstances of the employment relationship to determine whether the one employed possesses that degree of inde-

pendence necessary to require his classification as an independent contractor rather than an employee. *Id.*

Applying the *Hayes* factors, our Supreme Court has found that newspaper carriers typically do not exercise a sufficient degree of control over their work to be considered independent contractors as a matter of law. *Cooper v. Publishing Co.*, 258 N.C. 578, 589, 129 S.E.2d 107, 115 (1963). The Court stated that "[o]rdinarily, the day by day sale and delivery of newspapers under a cancellable agreement of indefinite duration may not be considered 'a specific job under contract' within the meaning of that phrase when used in defining an independent contractor." *Id.* Considering several of the factors raised in the *Hayes* and *Cooper* cases under the facts of the present case, we cannot conclude that Roberts was an independent contractor as a matter of law.

Roberts was not exercising "an independent business, calling, or occupation" by delivering newspapers for the Herald. The prompt delivery and circulation of newspapers is essential to the newspaper's success and is part of the regular business of the publisher. *Id.* at 587-88, 129 S.E.2d at 114. Newspaper carriers "are just as much an integral part of the newspaper industry as are the typesetters and pressmen or the editorial staff." *Id.* at 588, 129 S.E.2d at 114 (citation omitted).

While independent contractors usually have a special skill or knowledge, the duties performed by newspaper carriers are generally "routine in nature, requiring diligence and responsibility rather than discretion and skill." *Id.* at 589, 129 S.E.2d at 115. The parties agree that the Herald had no real skill or education requirements for its carriers and that Roberts received little or no training when he started working for the Herald.

Also, the potential variations in time and manner in which a newspaper carrier could choose to deliver newspapers to customers on his route are considerably limited. *Id.* Roberts had little discretion in how to complete his route since he was. required to deliver the papers "in a dry and readable condition promptly upon receipt by him" and in a manner satisfactory to customers. Although the contract states that he could choose whether and in what manner to do business with any customer, if Roberts forgot or chose not to deliver to a customer, the Herald could opt to deliver the paper for him and penalize him with a fee of $3.00 per paper.

If Roberts breached any of the contract provisions, the Herald has the option of terminating his contract. Our courts have recognized that "the 'right to fire' is one of the most effective methods of control." *Id.* (quoting *Lassiter v. Cline*, 222 N.C. 271, 274, 22 S.E.2d 558, 560 (1942)). Under the terms of the contract, Roberts was subject to discharge if he did not deliver the newspapers in a "prompt and satisfactory" manner. Although Roberts could hire assistants, his ability to hire employees has little significance since the Herald retained the right to fire Roberts at will for a broad range of reasons. It is worth noting that while Roberts could terminate the contract for a breach by the Herald, the contract contained very few provisions that placed any kind of duty on the Herald.

However, while not dispositive, the contract in the case is still evidence of the relationship between Roberts and the Herald. In addition, defendants presented evidence that would permit a jury to find that Roberts engaged in an independent business over which the newspaper did not exercise the requisite degree of control necessary to transform him into an employee. Thus, we hold that the entry of summary judgment should be reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Judges HUDSON and GEER concur.