MOLLIE M. WILLIS v. J. G. WHITE & CO.

(Filed 4 March, 1909.)

1. **Railroads—Construction—Improper Drainage—Independent Contractor—Negligence.**

   When one who has contracted to construct a roadbed and track for a railroad company according to plans furnished by the civil engineer of the company enters upon the lands of the owner for that purpose, both he and the railroad company are responsible in damages for his negligent failure to use reasonable efforts to protect the land and crops growing thereon from injury caused by the construction.

2. **Railroads—Construction—Improper Drainage—Negligence—Independent Contractor—Completion of Work—Liability.**

   An independent contractor who has constructed a roadbed and track for a railroad company on its right of way in accordance with the plans and specifications of the civil engineer of the company, is not liable to the owner of the land for damages from improper drainage, caused by an error of the engineer in fixing the size of the drainpipe, which accrued after the completion of the work and delivery to the railroad company.

3. **Same—Permanent Damages.**

   Permanent damages to land cannot be recovered of an independent contractor who has constructed a roadbed and road for a railroad company on its easement over the lands of another according to the plans and specifications of the company's civil engineer, his authority ceasing thereon when the work is turned over to and accepted by the company.

4. Married Women—Damages to Land—Joinder of Husband—
    Parties.

> A married woman may maintain an action without joining her
> husband to recover damages to her land caused by the improper
> construction of a roadbed and road on a railroad company's
> right of way thereon.

ACTION tried before *O. H. Allen, J.,* and a jury, at October
Term, 1908, of CRAVEN.

The testimony discloses the following case: Plaintiff, a *feme
.covert,* being the owner of a tract of land described in the complaint, conveyed to the Norfolk and Southern Railway Company a right of way over said land upon which to construct a
roadbed and track for its use as a common carrier. The engineers of the railroad company made a plan containing specifications for the construction of the roadbed, drainpipes, etc. The
defendant contracted with the railroad company to construct
the roadbed, track, etc., in accordance with the plans and specifications. The right of way ran through plaintiff's field, which
was drained by a ditch crossed by the roadbed and track. The
engineers prescribed the size of the drainpipe to be placed under
the roadbed. The defendant built according to the plans and
specifications. The engineer says: "I tried to make every provision for the draining of the land and, in my judgment, put in
sufficient pipes to drain it." The work was done by defendant.
between 15 June, 1906, and 1 January, 1907.

Plaintiff alleges: (1) That defendant's employees removed
the fence at the point of entrance to the land and failed to construct cattle guards and provide means for keeping the cattle
off the land upon which a crop was growing; that by reason of
defendant's negligence in this respect cattle went upon the land
and injured the crop. (2) That defendant, by its negligence
in the construction of the road, stopped up the ditches on the
land of plaintiff, and by reason thereof "it is now flooded when
it rains, on account of the drains being stopped up and cut off,"
etc.; that the land is "sogged and soured" and its fertility destroyed; that the injury is permanent.

Defendant denied the material allegations of the complaint,
and set up as a bar to plaintiff's action a release by plaintiff's
tenant for all claim of damages to the crop.

His Honor submitted the following issues:

1. "Was the plaintiff's crop damaged by defendant's negligence?

2. "What damage is plaintiff entitled to recover for crops?

3. "Was plaintiff's land permanently damaged by defendant's negligence?

4. "What sum is plaintiff entitled to recove for permanent injury to her land?"

There was evidence tending to show negligence of defendant in failing to protect the growing crop on the land while constructing the road, and its injury by reason of cattle going upon it. The jury found the issue in the affirmative and assessed the damages at $125. Upon the third issue there was evidence that the land was injured by reason of the defective drainage. One witness says: "The water wants to cross the railroad, and it can't; there is no way for it to go under the track." The evidence noted was all introduced by plaintiff. Defendant moved for judgment of nonsuit. Motion denied. Defendant excepted.

His Honor charged the jury upon the third issue: "By having sold the defendant a right of way through her land, that carried with it the right to erect the railroad over her land, but in doing so the parties constructing it are required to use every reasonable means of protecting the land through which the railroad is constructed, and if the parties constructing it negligently fail to use such means as were reasonable and proper for protecting the land it would be held liable in damages. You will consider the evidence. Was the land flooded, and if so, could that have been prevented by the use of ordinary care on the part of the defendant in constructing the road? Could they have made arrangements to have taken off that water by the exercise of reasonable care?" To this instruction defendant excepted. His Honor further told the jury that if they found the issue in the affirmative the measure of damages would be the difference in the value of the land with the road constructed as it now is and the value of the land had the road been skillfully constructed. Defendant excepted. Verdict and judgment for $325 permanent damages. Defendant appealed.

*R. A. Nunn* for plaintiff.
*Moore & Dunn* for defendant.

CONNOR, J.  We concur with his Honor's view in regard to the measure of duty which the railroad company owed to the plaintiff in constructing its roadbed and track over her land. We further concur with him in the opinion that when defendant contractor entered upon the land for the purpose of constructing the roadbed and track, pursuant to the plans and specifications made by the engineers, it came under a legal liability to use all reasonable efforts to protect plaintiff's land and the crops growing thereupon from damage, and for negligent failure to meet this standard of duty both the railroad and defendant are liable. There was ample evidence to sustain the plaintiff's allegation and the verdict of the jury in this respect.  The defendant's motion for judgment of nonsuit, therefore, was properly denied.

The questions presented upon defendant's exceptions pointed to the third issue are much more serious.  We do not find any evidence of negligence on the part of defendant in performing the work, constructing the roadbed, in accordance with the plans and specifications furnished to it by the company's engineer. The only evidence upon this phase of the case comes from plaintiff's witness, Colvin, who says that he was the engineer. "White & Co. had nothing to do with the plan and diagram; they had to build the railroad as I directed.  I was in charge of that section and I represented the railroad company; they built this according to the lines I laid out.  I put the size and position of the pipes on the map, and they put it in according to that. White & Co. had no authority over me.  If there is any defect in the ditches I should say it was due to the plans of the railroad.  They carried out the general plans as I made them."  It is apparent, therefore, upon plaintiff's evidence—and there is none to the contrary—that whatever permanent damage plaintiff's land sustained is due to the mistake of the engineer in fixing the size of the drainpipe.  It is alleged in the complaint that defendant began work in June, 1906, and concluded 1 January, 1907.  It is manifest that for all damage sustained by injury to the crop of 1906 plaintiff has recovered in this action on the first and second issues.  It is in evidence that plaintiff sued the

railroad company in another action for "damage and injury to crops growing on the land," and her tenant recovered pay from defendant for his interest in the crops of 1906. It is clear that full compensation has been recovered for all damage sustained prior to the institution of this action 29 May, 1907. Is defendant, an independent contractor, liable for permanent damage to the land by reason of the mistake of the engineer of the railroad company in fixing the size of the drain? It was the absolute duty of the company to provide a sufficient drain through its roadbed and thereby avoid ponding water upon plaintiff's land. There is no question of negligence involved. The principle controlling the liability of the railroad is laid down by *Shepherd, C. J.,* in *Staton v. Railroad,* 111 N. C., 278. Applied to this case, the railroad was entitled to construct its roadbed across plaintiff's land, but in doing so was not entitled to close up a ditch draining the land. It was under an absolute duty to provide means sufficient to permit the water to flow under or through the roadbed, as it did when the right of way was granted. For a failure to make such provision it was liable to an action when substantial damage was sustained—that is, the cause of action accrued from that time, and not from the time the roadbed was constructed. *Staton v. Railroad,* 147 N. C., 428; *Ridley v. Railroad,* 118 N. C., 996. The cause of action, therefore, is not for a trespass committed in building the road, but for injury caused by maintaining a nuisance whereby plaintiff's land is "sogged and soured." For this the plaintiff may, as against the railroad company, recover in one action permanent damages, for the reason that the structure is permanent. The road, upon paying the judgment, acquires an easement to maintain its roadbed and track for the reasons set forth in *Ridley's case, supra,* and many others, including *Beasley v. Railroad,* 147 N. C., 362; Revisal, sec. 394. If defendant be liable at all for constructing the roadbed according to the plans and specifications furnished by the railroad company's engineers, it certainly cannot be so for any other damage than accrued prior to the completion of the work and delivery to the owner. There is much doubt whether, in the absence of any negligence in construction, a builder or contractor is liable to third parties for damages caused by mistake in

the architect or engineer. In *Pearson v. Zable,* 78 Ky., 168, a municipal corporation prescribed the plan for making street improvement, and employed defendants to perform the work, which resulted, by reason of the defective plan, in injury to an owner of adjoining lots. The court held that the town was liable, but, in respect to the contractor, said: "It is not alleged that the appellants did not grade the street in all respects as required by the ordinance and contracts, and we must therefore assume that they did. What they did having been done under authority of law, they are not responsible for injury resulting to the appellee in consequence of the failure to provide an outlet for the water accumulating in the street, or for the consequences resulting from it. It was not their duty, but the duty of the city, to provide plans for the work and to guard against unnecessary injury to the property." The distinction between liability for negligent construction and for injuries resulting from errors of the engineers is stated by the editor of the Am. and Eng. Enc. (Vol: 16, p. 208). The railroad company is not liable for injuries caused to persons or property by the wrongful act of the contractor "for failure to provide drains in constructing the railroad, whereby injuries result before the road is turned over to the railroad company. * * * An independent contractor is not liable, as a general rule, for injuries to a third person accruing after his completion of the work and its acceptance by the employer." There are exceptions to the general rule, but the present case does not come within them. *Curtin v. Somersett,* 140 Penn. St., 70; 23 Am. St. Rep., 220. It is manifest that upon the evidence in this case the only damage sustained by the plaintiff is caused by the failure of the engineers to provide for a drain of sufficient size. There is, so far as we can perceive, no evidence that the land was "sogged and soured" at the time the road was completed and turned over to the company. No cause of action, therefore, accrued against the defendant, because there was no trespass on her property and no substantial injury sustained at that time. For damages resulting thereafter the company was liable for maintaining a nuisance resulting in injury. Under the common-law system of procedure the plaintiff's action would be trespass on the case and not *quare clausum frigit.*

WILLIS *v.* WHITE.

Again, if defendant was liable at all, the damages could be assessed only to the time of the trial. The reasons upon which permanent damages are allowed to be assessed against a railroad company, or any other corporation having the right of eminent domain, do not apply to the defendant. It can acquire no easement or right to flood plaintiff's land or to continue the obstruction to the flow of the water, nor has it any right or power to go upon the company's roadbed and enlarge the drain. Its connection with the property came to an end when the work was completed. Its wrongful act, if wrongful at all, was in constructing the roadbed with an insufficient drain. It has no power to maintain or abate the nuisance. For injuries sustained by continuing the conditions injurious to plaintiff the railroad company alone is liable. If a contractor who constructed a building on the land of another according to plans and specifications is to be held liable to all who may come into the house, or all adjoining landowners, for injuries accruing after the completion of the building and its acceptance by the owner, as said by *Paxson, C. J.,* in *Curtin v. Somersett, supra,* "it would be difficult to measure the extent of his responsibility, and no prudent man would engage in such occupations upon such conditions." We incline very strongly to the opinion that if a motion had been made by defendant for judgment of nonsuit on plaintiff's second cause of action it should have been allowed. The testimony sent up is not very full, and we direct a new trial upon the third and fourth issues.

We concur with his Honor's ruling in regard to the right of the *feme* plaintiff to maintain the action without joining her husband. Revisal, sec. 408. We also concur with his ruling in regard to the effect of the other actions brought by the tenant and the plaintiff.

The appellant will pay costs of this Court, exclusive of printing.

Partial New Trial.